# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

MERCEDES BENZ USA LLC,

    Plaintiff,

v.

JAMES LEWIS,

    Defendant.

2:19-CV-10948-AC-EAS
Honorable Avern Cohn
District Court Judge

Honorable Elizabeth A. Stafford
Magistrate Judge

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS UNDER FRCP 12(b)(1) and (6)**

i

# **TABLE OF CONTENTS**

I. MBZ FAILS TO ALLEGE A JUSTICIABLE CONTROVERSY .................1

II. MBZ MISUNDERSTANDS SECTION 120 ..................................................1

    A. The plain statutory language shows the Artist is correct that Section 120(a) limits only the new species of architectural copyrights..................2

    B. The statutory scheme supports the Artist's interpretation of Section 120(a)....................................................................................................3

    C. The *Leicester* case supports the Artist's interpretation. .............................4

    D. The legislative history supports the Artist's interpretation. .......................7

    E. MBZ's argument that public art is not protected by copyright is wrong...7

    F. Section 120(a) does not exempt MBZ's use of the Mural. ........................8

III. MBZ MAKES A NUMBER OF MISCHARACTERIZATIONS ..................9

Nothing in MBZ's Opposition alters the Artist's analysis.

## I.     MBZ FAILS TO ALLEGE A JUSTICIABLE CONTROVERSY

MBZ argues that the "great weight of authority holds" that a declaratory relief action for non-infringement is ripe for adjudication even prior to registration of the copyright. But the one published case MBZ cites is not a non-infringement action at all, but rather a dispute between co-authors. Further, each of MBZ's three unpublished district court cases reject a *jurisdictional* challenge to a pre-registration declaratory relief action, which became untenable after *Reed*. But the Artist does not challenge subject matter jurisdiction. Rather, as explained in his motion to dismiss, he argues that MBZ has *failed to state a claim* for a declaratory relief, for the simple reason that it does not face an imminent legal action. [Motion at 7.] Notably, MBZ avoids the leading case on this issue, in which the Eleventh Circuit explains this distinction. *Fastcase, Inc. v. Lawriter, LLC*, 907 F.3d 1335, 1341 (11th Cir. 2018).

## II.     MBZ MISUNDERSTANDS SECTION 120

The Artist moves to dismiss MBZ's third cause of action for a judicial declaration that "the mural is exempt from protection under the Architectural Works Copyright Protection Act, based upon the terms of 17 U.S.C. § 120(a)." [Complaint ¶ 60.] The Artist argues that (1) MBZ failed to allege that the building

1

on which the Mural appears is an "architectural work," and (2) even if the building was an architectural work, it does not follow that photographs of pictorial, graphic, and sculptural ("PGS") works appearing thereon are "exempt from protection."

MBZ's response is disarmingly simple. It argues Section 120(a) allows photography of buildings. Period. If this interpretation of Section 120(a) is correct, it would hardly matter that MBZ failed to properly allege the existence of an architectural work. And if such protection were as absolute as MBZ claims, the inclusion of PGS works in the exemption would require no additional analysis.

MBZ's interpretation can make sense at first glance. Why would something need to be copyrighted, in order to be exempt from copyright? But as explained below, the exemption applies only to protected architectural works because the public has always been, and remains, free to photograph all other buildings, which are uncopyrightable useful objects. Without Section 120(a), the new species of "architectural copyright" would make an infringer of anyone snapping pictures in the vicinity of a new building. Section 120(a) merely preserves the right to photograph post-1990 buildings despite their new copyright protection.

**A.  The plain statutory language shows the Artist is correct that Section 120(a) limits only the new species of architectural copyrights.**

MBZ suggests that the Artist avoids the plain language of the statute. But that language states unequivocally that it applies only to copyrighted "architectural works." Section 120(a) reads, in pertinent part:

2

>**The copyright in an architectural work** that has been constructed does not include the right to prevent the making… of photographs of the work…. (emphasis added).

It's hard to imagine language that more clearly contradicts MBZ's claim that Section 120(a) was enacted to allow photography of all buildings. The statute says only that a **"copyright in an architectural work"** shall be limited, in that **such a copyright** cannot be used to prevent photography of that building. The statute says nothing about non-copyrighted buildings, or non-architectural copyrights.

No one has ever suggested that the propriety of photographing pre-1990 buildings, or useful objects in general, carried with it the right to reproduce graphic or sculptural works that appear on buildings (or on other useful objects such as clothes or furniture). Indeed, courts have developed a rigorous jurisprudence to determine when a PGS work is separable from a useful object that it appears on or in, and thus protected by copyright. *See, e.g., Star Athletica, L.L.C. v. Varsity Brands, Inc.*, 137 S. Ct. 1002 (2017). Nothing in the AWCPA suggests that it was meant to alter this calculus, for either pre- or post-1990 buildings.

**B.  The statutory scheme supports the Artist's interpretation of Section 120(a).**

Besides the plain language of Section 120(a), context shows that its sole function is to limit copyrights in architectural works. For one thing, the title of Section 120(a) is "Scope of exclusive rights in architectural works." That Section 120(a) is part of the AWCPA also supports the idea that it limits only the new

3

copyrights created thereunder. If Congress wished to allow photography of buildings generally, it would not have done so as part of, and within, legislation creating new copyrights for post-1990 original buildings.

**C.     The *Leicester* case supports the Artist's interpretation.**

Both sides appear to agree that *Leicester* is a key case. MBZ quotes language on page 1219 of *Leicester,* that Section 120(a) "'allows the public the right to photograph public buildings' including any work that is 'part of the architectural work.'" [Opp. at 16.] But this quotation is not the holding of the case. First, it is a cobbling together of various phrases on page 1219. Second, it is a recitation of the defendant's position—not that of the court. Indeed, although MBZ neglected to include an ellipsis, the quoted sentence continues to also describe the plaintiff's contrary position: "… unless, as Leicester contends, the 1990 amendments specifically provide for the continued separate protection of sculptural works attached to buildings." *Leicester v. Warner Bros.*, 232 F.3d 1212, 1219 (9th Cir. 2000).

Even if these were the court's words, MBZ glosses over the key phrase "part of the architecture," to which the court devoted considerable attention. As explained below, quite a lot is required in order for a PGS work to be "part of" architecture (such as that it be planned along with the building, match its look and materials, and perform architectural functions).

4

The true "holding" of *Leicester* supports the Artist. To explain, some discussion of Leicester's confusing three-way split is required. The question that divided the judges (and which arises here) was whether Section 120(a) allowed reproduction and use of PGS work in or on a building. Judge Tashima's (concurring) view was similar to MBZ's here: that Section 120(a)'s permission to photograph a building trumped the copyright protections of PGS works embodied therein. *Leicester*, 232 F.3d at 1222. Judge Fisher's dissent offered a muscular argument for the contrary position (similar to the Artist's view here) that Section 120(a) limits only copyrights in architectural works, and does not affect the copyright in PGS works appearing in a photograph of a building. *Id*., at 1225-1236.

Judge Rymer's majority opinion obviously agreed with the concurrence in its result (no infringement because Section 120(a) applied), *but it agreed with the dissent that a PGS work on a building was generally still protected*. The majority opinion found that that Section 120(a) applied *only as a matter fact*—because the purported sculptural work was part and parcel of the architecture.[1] There was no

---

[1] Given the extraordinary degree of integration of the plaintiff's purported "sculptural work" into the building's architecture, *Leicester* shows just how rare it will be that a purportedly independent work will be "part of" a building's architecture. This was no mere sculpture. Rather it was a courtyard, garden, public space, and fountain—all contained by large walls that included decorative three-story high towers. Many of the particulars of the "sculpture" were mandated by architectural codes imposed by a development agency, and the work was planned

5

separate PGS work according to Judge Rymer, just an architectural work with sculptural elements—to which Section 120(a) would obviously apply. Under this approach, Judge Rymer (like the dissent) would protect a PGS work that was *not* simply "part of" the architecture. Judge Tashima wrote a concurrence precisely because he disagreed with the majority (and dissent) on this point.[2]

*Leicester* offers MBZ no get-out-of-jail-free card because no one would suggest that the Artist's Mural here is really just an aspect of the building's architecture. See *Falkner v. Gen. Motors LLC*, 2018 WL 5905820, at *5 (C.D. Cal. Sept. 17, 2018) ("All three judges on the [*Leicester*] panel unambiguously agreed that, for Section 120(a) to apply to a PGS work …, the PGS work must be 'part of' an architectural work.") MBZ has not pled such integration, and its (accurate) description and photographs of the Mural disclose that it could not be plausibly pled. Accordingly, if MBZ wants to argue that it did not infringe because advertisers need the right to photograph urban streetscapes, it will have to rely on the fair use doctrine, which has long served this purpose.

---

and built along with the building, matching its look and materials. *Leicester*, 232 F.3d at 1214, 1219.

[2] Further, not only was Judge Tashima alone in his reasoning, he stopped well short of endorsing the absolutist proposition that MBZ attributes to him (and inexplicably to the case itself). He did this by qualifying his argument as applying "at least" where the PGS work is a "functionally part of the architectural work." *Id*. at 1222 (emphasis added).

6

D. **The legislative history supports the Artist's interpretation.**

As described in the Artist's Motion, the legislative history of the AWCPA explains that it was enacted to do no more than required to comply with U.S. obligations in joining Berne, which mandated protection for architecture. Berne did not require absolute freedom to photograph buildings—and in fact Congress had to carefully study whether limiting architectural copyrights to allow photography was consistent with the required protections. See House Report 101-735, p 22.

MBZ cites to portions of legislative history that emphasize the cultural importance of photography of buildings. [Opp. at 14, 15.] But these excerpts support the Artist's interpretation—as a reason to avoid going overboard in protecting architecture via copyright. Again, these comments came within the context of creating architectural copyrights for the first time. More important, the legislative history states in no uncertain terms that Section 120(a) applies only to architectural works and is meant to limit the copyright in those works: "[The AWCPA] creates a new section 120(a)…, limiting the exclusive rights in architectural works." [H.R., p. 21]. In other words, Section 120(a) simply took back a little of what the AWCPA gave.

E. **MBZ's argument that public art is not protected by copyright is wrong.**

If more evidence were needed that MBZ is bending copyright law to suit its purposes, it is provided by its absurd assertion that "Indeed, placement of art

7

within public view is inconsistent with a claim to exclusive ownership." [Opp. at 15.] This could not possibly be true: Artworks in museums, galleries, and public square are fully protected by copyright. The lone case MBZ offers in support has nothing to do with copyright law. Rather, *R.MS. Titanic, Inc. v. Haver* involved *salvage law*, which gives "salvors" certain rights in recovered artifacts, based on ancient uncodified international law. 171 F.3d 943, 970 (4th Cir. 1999).

F.     **Section 120(a) does not exempt MBZ's use of the Mural.**

Section 120(a) has no application to this case, at least as it is currently pled. By its plain language, all Section 120(a) provides is that *the copyright in a building* (a new concept) shall not prevent photography of that building. It says nothing about the copyright in PGS works on a building, like the Mural. Accordingly, PGS works are protected as they always have been.

The Artist does not contend that "no one… is allowed to photograph a publicly visible building if graffiti art has been painted on the building." Under well-established law, most of such photography (including cityscapes and street scenes) will qualify as fair uses. MBZ does indeed bring a claim for non-infringement under the fair use doctrine, and notably, *the Artist does not challenge that claim because it has the virtue of coherence.* A court will eventually decide whether MBZ's advertising photograph, which appears to feature the Mural as its centerpiece, constitutes a fair use—but MBZ cannot escape copyright liability

without an analysis by pretending that all photographs of buildings are permitted. Because Section 120(a) could not act as a defense, the Court should dismiss MBZ's third cause of action.

### III. MBZ MAKES A NUMBER OF MISCHARACTERIZATIONS

The Artist also addresses the following mischaracterizations by MBZ.

- MBZ characterizes the Artist as disputing MBZ's (and the public's) right to photograph the Mural. But what the Artist objects to, of course, is the use of the Mural in MBZ's advertising.

- MBZ emphasizes that it "obtained a permit to photograph" and photographed only "in the permitted locations." What MBZ means, but might not be readily apparent, is only that it obtained a simple permit from the city to do outdoor photography in certain areas. No one would suggest this somehow amounted to permission to use the Mural.

- MBZ asserts that this case is not about "whether graffiti [mural] artists have or should have intellectual property rights." But it most certainly is. MBZ's interpretation of Section 120(a), if adopted by courts, would eviscerate copyright protection PGS works placed on buildings.

- MBZ alleges that the Artist has demanded $80 million for use of the murals. In due course, this will be shown to be false.

Respectfully submitted,

DATED: May 29, 2019

By:   /s/ *David Alden Erikson*
  ERIKSON LAW GROUP
  David Alden Erikson
  200 North Larchmont Boulevard
  Los Angeles, California 90004
  Telephone: 323.465.3100
  david@daviderikson.com

9

| | |
|---|---|
| GLUCK LAW FIRM P.C.<br>Jeffrey S. Gluck<br>602 N. Sweetzer Avenue<br>Los Angeles, California 90048<br>Telephone: 310.776.7413<br>jeff@gluckip.com | LIPPITT, O'KEEFE, GORNBEIN, PLLC<br>Norman L. Lippitt (P16716)<br>370 E. Maple Road, Third Floor<br>Birmingham, MI 48009<br>248-646-8292<br>nlippitt @lippittokeefe.com |

*Counsel for Defendant James Lewis*

## CERTIFICATE OF SERVICE

I hereby certify that on May 29, 2019, I electronically filed the foregoing DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS UNDER FRCP 12(b)(1) and (6) with the Clerk of the Court using the ECF system, which will send notification of such filing to all counsel of record.

          By:    /s/ *David Alden Erikson*
                  David Alden Erikson
                  200 North Larchmont Boulevard
                  Los Angeles, California 90004
                  Telephone: 323.465.3100
                  david@daviderikson.com