UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MERCEDES BENZ, USA, LLC.,

    Plaintiff,
v.                                                                                          HON. AVERN COHN

JAMES LEWIS,                                                                    Case No. 19-10948
JEFF SOTO and MAXX GRAMAJO,                                      Case No. 19-10949
DANIEL BOMBARDIER,                                                      Case No. 19-10949

    Defendants.
_____/

**MEMORANDUM AND ORDER**
**DENYING DEFENDANTS' MOTIONS TO DISMISS**

I. Introduction

These are declaratory judgment actions arising out of alleged copyright infringement violations. Plaintiff Mercedes Benz USA, LLC (Mercedes) filed three (3) declaratory judgment actions in this district against defendants who are artists and represented by the same counsel.[1] In broad terms, Mercedes obtained a permit to photograph various locations in downtown Detroit in conjunction with advertising one of its vehicles. Mercedes posted six (6) of the photographs on Instagram which depict in whole or in part murals painted on public buildings in Detroit by defendants. Defendants, through counsel, sent letters to Mercedes contending that the use of defendants' murals violates copyright law. Mercedes responded by seeking declaratory relief.

---

[1]The undersigned was assigned the first case by blind draw. The two later cases were reassigned to the undersigned as companions to the first case.

Defendants are: James Lewis (Lewis), Daniel Bombardier (Bombardier), Jeff Soto (Soto) and Maxx Gramajo (Gramajo).

Before the Court are motions to dismiss filed by each defendant, as follows:

Lewis' motion to dismiss, Doc. 8 in case no. 19-10948

Bombardier's motion to dismiss, Doc. 12 in case no. 19-10951

Soto and Gramajo's motion to dismiss, Doc. 9 in case no. 19-10949

All of the defendants argue that the declaratory judgment complaints fail to state a claim because (1) the case is not ripe as defendants have not registered copyrights, (2) Mercedes has failed to state a claim under the Architectural Works Copyright Protection Act (AWCPA), 17 U.S.C. § 120(a). Soto and Gramajo also argue that the Court lacks personal jurisdiction over them.

For the reasons that follow, the motions will be denied. As will be explained, Mercedes has alleged a plausible claim for declaratory relief against defendants and the Court has personal jurisdiction over all of the defendants.

## II. Background

### A. General

Mercedes sells and distributes vehicles, including the G 500 Series vehicle (the "G 500"). In January 2018, Mercedes attended the North American International Auto Show in Detroit, Michigan, to unveil the G 500, then its newest model luxury SUV. During that time, Mercedes obtained a permit from the City of Detroit to photograph the G 500 in specific downtown areas. The permit authorized Mercedes to photograph its G 500 in several locations, including the area between the Eastern Market and 1314 Gratiot Avenue, where defendants' murals are located

Mercedes commissioned photographs of its G 500 throughout the city of Detroit. On January 26, 2018, Mercedes posted six of those photos on an Instagram account, @mercedesbenz.

### 1. Lewis

As to Lewis, among the photos Mercedes posted was a picture depicting the G 500 driving near 2001 Wilkins Street. The photo partially depicted Lewis' mural in the background. The post stated, "[t]his off-road legend is always ready for some urban exploration to mix things up" and was designed to highlight the G 500's versatility.

Lewis created the Mural in 2016 during the second year of the now annual art festival, Murals in the Market. The festival aims to revitalize the Eastern Market district of Detroit and turn it "into a must-see destination for arts, as well as food…." Complaint at ¶¶ 42-43, 45. Lewis' mural was painted on the façade of a building, was integrated into that building, and became a permanent fixture of the Eastern Market's cityscape.

### 2. Bombardier

Another photo Mercedes posted was a picture of the G 500 driving in front of Mike's Coney Island Restaurant. The photo partially depicted Bombardier's mural in the background. The post stated "[t]his off-road legend is always ready for some urban exploration to mix things up" and was designed to highlight the G 500's versatility.

Bombardier created the mural in 2017 during the third year of the Murals in the Market. The mural was painted on the side of façade of a building, was integrated into that building, and became a permanent fixture of the Eastern Market's cityscape.

### 3. Soto and Gramajo

Another photo Mercedes posted was a picture depicting the G 500 driving in front

of the Gratiot Central Market. The photo partially depicted a mural painted by Soto and Gramajo in the background. Again, the post stated: "[t]his off-road legend is always ready for some urban exploration to mix things up" and was designed to highlight the G 500's versatility.

Soto and Gramajo created the mural in 2015 during the first year of the Murals in the Market. The mural was painted on the side of façade of a market building, was integrated into that building, and became a permanent fixture of the Eastern Market's cityscape.

### B. The Fall Out and Litigation

Over a year after Mercedes posted the pictures, defendants hired an attorney who sent letters to Mercedes in which they "threatened to file a copyright infringement lawsuit against Mercedes based on Mercedes depiction of the … mural." Complaint at ¶ 6. Mercedes says that as a "courtesy" it removed the photographs from Instagram. Complaint at ¶ 6. However, defendants continued to make threats, expressing a "desire to 'expose' Mercedes, use formal discovery to learn information other people can use to sue Mercedes, and tell a jury that Mercedes made $80 million selling the G series truck in an effort to wipe out Mercedes revenue from sales of the G Series." Id. at ¶ 7.

Shortly after receiving the letters, Mercedes filed these declaratory judgment actions, contending (1) Mercedes made fair use of defendants' murals, (2) defendants' murals are exempt from protection under the AWCPA, (3) Mercedes did not violate the Digital Millennium Copyright Act, 17 U.S.C. § 1201 et seq., (4) Mercedes did not violate any of defendants' alleged rights.

### III. Legal Standard

In assessing a Rule 12(b)(6) motion, the district court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded factual allegations as true. Ziegler v. IBP Hog Mkt., Inc., 249 F.3d 509, 512 (6th Cir. 2001). The defendant bears the burden of demonstrating that the plaintiff has failed to state a claim upon which relief can be granted. Crugher v. Prelesnik, 761 F.3d 610, 614 (6th Cir. 2014). To withstand a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (internal quotation marks omitted) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the [party] pleads factual content that allows the court to draw the reasonable inference that the [opposing party] is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. 555-56). However, "[t]hreadbare recitals of all the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. 662, 678 (2009).

"In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), th[e] Court may only consider 'the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings, and matters of which the [Court] may take judicial notice.'" Murray v. Geithner, 624 F. Supp. 2d 667, 671 (E.D. Mich. 2009) (citing 2 James Wm. Moore et al., Moore's Federal Practice 12.342 (3d ed. 2000).

## IV. Analysis

### A. Ripeness/Registration

Defendants argue that Mercedes cannot not seek declaratory relief unless and

5

they decide to register copyrights. In other words, they contend that this action is not "ripe" until and unless defendants register their murals with the copyright office because registration is a prerequisite to suit. This argument is not well taken. A declaratory judgment action is proper when "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Commodities Exp. Co. v. Detroit Int'l Bridge Co., 695 F.3d 518, 525 (6th Cir. 2012). If the alleged facts "'demonstrate that the defendant could file a coercive action arising under federal law,'" the court's jurisdiction is properly invoked. Severe Records, LLC v. Rich, 658 F.3d 571, 581 (6th Cir. 2011).

Here, defendants threatened to sue for copyright infringement. The complaint alleges that defendants made adverse claims against Mercedes based on their claimed rights in the murals and threatened to sue Mercedes. Under the standard for declaratory relief, the complaint states a ripe claim.

Defendants argue that there can be no case or controversy unless they decide to register copyrights. Courts have held otherwise. See Otter Prods., LLC v. Stage Two Nine, LLC, 2019 WL 570642, at *6-7 (D. Colo. Jan. 15, 2019), report and recommendation adopted, 2019 WL 568477 (Feb. 12, 2019) (rejecting argument that lack of registration precludes a declaratory judgment action for non-infringement); Archie Comic Publ'ns, Inc. v. DeCarlo, 2001 WL 946496, at *1 (S.D.N.Y. Aug. 21, 2001) (same); Bhl Boresight, Inc. v. Geo-Steering Sols., Inc., 2017 WL 1177966, at *3-4 (S.D. Tex. Mar. 29, 2017) (same); Telebrands Corp. v. Exceptional Prods., Inc., 2011 WL 6029402, at *3 (D.N.J. Dec. 5, 2011) (same); Corwin v. Quinonez, 858 F. Supp. 2d 903, 908-09 (N.D. Oh. Mar. 12, 2012) (same).

Defendants' reliance on the Supreme Court's recent decision in Fourth Estate Publishing Ben. Corp. v. Wall-Street.com, LLC, 139 S. Ct. 881 (2019), does not alter this conclusion. Fourth Estate did not address an action seeking a declaration of non-infringement. Rather, it holds only that section 411(a) typically "bars a copyright owner from suing for infringement 'until registration … has been made.'" Id. at 888.3 But even then, registration is only "akin to an administrative exhaustion requirement that the owner must satisfy before suing." Id. at 887 (emphasis added).

Significantly, the Supreme Court observed years ago that registration is a condition that owners "ordinarily must satisfy before filing an infringement claim." Reed Elsevier, Inc. v. Muchnick, 559 U.S. 154, 157-58 (2010). In the years since Reed Elsevier, the precedent cited above, has become well-established that the absence of a registration does not preclude an accused infringer from seeking a declaration of non-infringement. Accordingly, Fourth Estate does preclude Mercedes from seeking declaratory relief.

Defendants' reliance on TreadmillDoctor.com, Inc. v. Johnson, 2011 WL 1256601, at *1-3 (W.D. Tenn. Mar. 31, 2011) is also misplaced. Johnson addresses an infringement action, not a declaratory judgment action. Likewise, Specific Software Sols., LLC v. Inst. Of WorkComp Advisors, LLC, 615 F. Supp. 708, 716 (M.D. Tenn. 2009), goes against the weight of authority and has been criticized for wrongly deciding that registration is a jurisdictional prerequisite, as other courts in that district have recognized. See Sony/ATV Music Pub. LLC v. D.J. Miller Distrib., Inc., 2010 WL 3872802, at *4 (M.D. Tenn. Sept. 28, 2010) (Reed Elsevier abrogated Specific Software's holding).

Defendants submitted as supplemental authority a recent decision from the Western District of Texas, Mai Larsen Designs v. Want2Scrap, LLC. No. SA-17-CV-1084, 2019 WL U.S. Dist. LEXIS 92215 (W.D. Tex. June 3, 2019) for the proposition that registration is required even in a declaratory judgment action. Mai Larsen began as a declaratory judgment action by Want2Scrap. However, a day after the declaratory judgment action was filed, Mai Larsen sued Want2Scrap for infringement. The cases were consolidated and the parties were realigned to reflect Mai Larsen as plaintiff and Want2Scrap as defendant. Defendant Want2 Scrap then moved to dismiss Mai Larsen's copyright claims because Mai Larsen did not obtain a copyright registration prior to suing Want2Scrap. Contrary to defendants' contention, the district court, did not however, dismiss Want2Scrap's counterclaims for declaratory relief of non-infringement. Instead, the district court asked for additional briefing because it suspected Want2Scrap's declaratory relief claim may be barred. Rather than brief the issue, Want2Scrap notified the district court that "they lack the resources to proceed to trial. Mai Larsen, 2019 U.S. Dist. LEXIS 103225 at * 2-3 (W.D. Tex. Jun. 20, 2019). The district court therefore dismissed the case without prejudice and without deciding whether registration is required in order to bring a declaratory judgment action in a copyright case. Thus, Mai Larsen does not stand for the proposition defendants assert and does nothing to advance defendants' argument.

In Otter Prod., LLC v. Stage Two Nine, LLC, supra, the district court explained why subjecting a declaratory judgment action to a preregistration requirement is problematic:

To subject declaratory judgment actions of non-infringement which seek to

8

> establish the plaintiff's non-infringement to § 411(a)'s registration requirement would improperly skew the balance between copyright holders and others in or using the creative arts. Section 408 of the Copyright Act permits the "owner of the copyright" to seek registration in the Copyright Office. Logically, a non-owner/potential-infringer cannot properly seek registration. Accordingly, a copyright holder could create a cloud over the use or creation of work by declining to register a copyright but yet threatening a potential infringer with legal action. In that scenario, the application of § 411(a) registration requirement would de facto divest the potential infringer of any legal recourse. See Latin Am. Music Co., 642 F.3d at 90. Yet a copyright holder could elect to register a copyright at any time and then commence suit. Telebrands Corp. v. Exceptional Prod. Inc., No. 11-CV-2252, 2011 WL 6029402, at *3 (D.N.J. Dec. 5, 2011).

Otter Prod., LLC v. Stage Two Nine, LLC, No. 18-CV-01724-CMA-NYW, 2019 WL 570642, at *7 (D. Colo. Jan. 15, 2019) (emphasis in original).

Overall, the Court finds the reasoning in Otter Prod. as to why copyright registration is not a prerequisite for filing a declaratory judgment action of non-infringement persuasive. As such, Mercedes has stated a ripe claim, regardless of whether defendants register for copyright protection.

### B. The AWCPA

Defendants next argue that Mercedes has failed to state a claim under section 120 of the AWCPA. This section provides:

> (a) Pictorial Representations Permitted.—
> The copyright in an architectural work that has been constructed does not include the right to prevent the making, distributing, or public display of pictures, paintings, photographs, or other pictorial representations of the work, if the building in which the work is embodied is located in or ordinarily visible from a public place.
>
> (b) Alterations to and Destruction of Buildings.—
> Notwithstanding the provisions of section 106(2), the owners of a building embodying an architectural work may, without the consent of the author or copyright owner of the architectural work, make or authorize the making of alterations to such building, and destroy or authorize the destruction of such building.

9

This section establishes an important right of the public to take pictures of buildings that are publicly visible, free from any claim of copyright infringement.

Defendants first argues that section 120(a) does not apply to protect Mercedes' photos because the mural are a pictorial, graphical, or sculptural ("PGS") work. In support, defendants cite Leicester v. Warner Brothers, 232 F.3d 1212, 1219 (9th Cir. 2000). In Leicester, the Court of Appeals for the Ninth Circuit held, following a bench trial, that section 120(a) "allows the public the right to photograph public buildings including" any work that is "part of the architectural work." This is because the term "architectural work" extends to "the overall form as well as the arrangement and composition of spaces and elements in the design of the building." Id. at 1218 (citing 17 U.S.C. § 101). In Leicester, the creator of the "Zanja Madre" towers—a series of sculptures along the courtyard of the 801 Building—sued filmmakers for copyright infringement for depicting the 801 Building, including the towers. Id. at 1214. The Ninth Circuit rejected the plaintiff's claim, finding that the towers, though a PGS, were part of an architectural work as elements in the 801 Building's design. Id. at 1217-18. Thus, the film's depiction of the building (including its PGS design elements) was therefore protected and not in violation of copyright law. Id. That is precisely the claim Mercedes is asserting here.

Defendants also argue that applying section 120(a) is unjust because it would allow "anyone to distribute copies of an otherwise copyrightable PGS work," thus wiping out all copyright protection for street art murals. The court in Leicester rejected this same policy same argument, see Leicester, at 1219-20. As the Ninth Circuit observed, "whether or not [plaintiff] may have some other claim for a different infringement of his

copyright in the Zanja Madre towers as a sculptural work, we believe he has none for a pictorial representation of the 801 Tower and its streetwall embodying a protected architectural work." Id. at 1219.  Thus, the Ninth Circuit recognized that the plaintiff might have an infringement claim where, for example, someone created a reproduction of his sculpture divorced from the context of the building in which it was embodied, i.e. on a poster, t-shirt, or other print media.  However, plaintiff did not have an infringement claim based on a photograph of the building that included the sculpture as a design element of the building.  See id.  In sum, nothing in Leicester supports defendants' argument that Mercedes does not have a claim under the ACWPA.

Similarly, defendant's reliance on the Supreme Court's decision in Star Athletica, L.L.C. v. Varsity Brands, Inc., 137 S. Ct. 1002 (2017), is misplaced.  That decision concerns design elements of useful articles, not buildings, and stands for the proposition that design elements of a useful article can be PGS works protected by copyright.  See id. at 1012.  It does not address the public's right to photograph useful articles that include the PGS works as design elements under section 113(c)— let alone the public's right to photograph buildings under section 120(a).  Again, nothing in Star Athletica prevents Mercedes from asserting a claim under the AWCPA.[2]

### C.  Other Arguments

Defendants advance several other arguments which essentially attempt to hold

---

[2]Defendants also argue that the legislative history of the AWCPA reveals that "Congress did not intend to alter the protectability of PGS works."  Putting aside that the court in Leicester rejected this argument, see Leicester, 232 F.3d at 1219-20, this argument is not appropriate on a motion to dismiss which considers only whether the complaint states a viable claim for relief.  As such, it is not necessary to address this argument at this time.

Mercedes to pleading requirements that are not found within the text of section 120(a). First, defendants contend that Mercedes must allege that the buildings at issue are "original" and "protected by copyright." This argument lacks merit. Section 120(a) does not contain any requirement of protectability. "Originality" is not included within the definition of "architectural work" as used in section 120(a). See 17 U.S.C. § 101. The only requirement of originality is found within section 102(a), which defines the scope of copyrightable matter as "original works of authorship" but this section does not limit section 120(a)'s right to photograph publicly visible buildings.

Second, defendants argue that Mercedes must plead that the buildings are "utilitarian" and include more than "standard features." Defendants cite no authority in support. Defendants also argue that "utilitarian structures" are excluded from section 120(a), but did not explain what this means or the legal basis for that claim. To the extent this argument refers to defendants' reference to objects such as "bridges, cloverleafs, dams, walkways, tents, recreational vehicles, mobile homes, and boats," it is clear that the buildings are none of these things. See Compl. at ¶ 22.

Third, defendants suggests that section 120(a) does not apply to buildings constructed before December 1, 1990, citing 37 C.F.R. § 201.11(d)(3)(I). This regulation provides only that buildings constructed before December 1, 1990 "cannot be registered" for copyright protection. 37 CFR § 202.11(d)(3)(i). That is not an issue in this case. The relevant statute here, section 120(a), is not about the protection of architectural works; it concerns whether Mercedes had the right to photograph publicly visible buildings which contained defendants murals.

Fourth, defendants argue that Mercedes must plead that humans actually occupy

the buildings. Again, they cite no authority for this proposition. The regulation defendants cites requires only that buildings be "humanly habitable structures,"—i.e., structures that are capable of habitation. See 37 C.F.R. § 202.11(b)(2)). Section 120(a) extends to buildings that are capable of being occupied, even if they are not actually inhabited. See Leicester, 232 F.3d at 1218 ("'building' includes structures 'that are used, but not inhabited'"). The photos attached to the complaints in all three cases show that the buildings are capable of human habitation and use. Thus, the complaints sufficiently plead the existence of a building capable of occupation and use by humans. See Moser Pilon Nelson Architects, LLC v. HNTB Corp., No. 05-CV- 422(MRK), 2006 WL 2331013, at *6 (D. Conn. Aug. 8, 2006) (rejecting argument that a garage was not "humanly habitable" and a building because the garage was "surely a permanent and stationary structure").

Finally, defendants rely on Gaylord v. United States, 595 F.3d 1364 (Fed. Cir. 2010) to argue that structures that humans 'access' but not 'occupy' are excluded" from section 120(a). Their reliance is misplaced. The structures at issue in Gaylord were not buildings at all, but rather a collection of "19 stainless steel statutes representing a platoon of foot soldiers in formation" known as "the Column." Id. at 1381. The Federal Circuit did not hold, as defendants suggest, that in order for a building to implicate section 120(a), it must be both accessible and actually occupied. Rather, the court found that accessible structures "not intended for occupancy" cannot be buildings where they are more akin to bridges and walkways rather than structures capable of habitation. See id. The buildings at issue here are not like the statutes at issue in Gaylord. In sum, Gaylord does not prevent Mercedes from asserting a claim under the

13

AWCPA.

Overall, Mercedes has alleged a plausible claim that section 120(a) of the AWCPA protects Mercedes' right to photograph publically visible buildings which contained defendants' murals. Whether they will prevail on this claim is not before the Court at this time.

### D. Personal Jurisdiction

Soto and Gramajo argue that they are not subject to personal jurisdiction in Michigan because they live and work in Los Angeles. In order to determine if personal jurisdiction is appropriate, a court must examine both the law of the state in which the district court sits and the Due Process Clause of the Fourteenth Amendment. In Michigan, a plaintiff's burden of showing that a defendant can be called to answer a complaint is "relatively slight" where there has been no jurisdictional discovery and no evidentiary hearing. Vangheluwe v. Got News, LLC, 365 F. Supp. 3d 850, 856 (E.D. Mich. 2019). Plaintiffs only need to make a prima facie showing that jurisdiction exists and pleadings and affidavits must be viewed in the light most favorable to the them. Id.

Michigan's Long Arm Statute, M.C.L. § 600.70 parallels the requirements of the Due Process clause. When a state's long-arm statute reaches to the same limits as the Due Process Cause, the two inquiries merge and the court only needs to decide whether asserting personal jurisdiction violates constitutional due process. Intera Corp., 428 F.3d 605, 616 (citing Aristech Chem. Intl. v. Acrylic Fabricators, 138 F.3d 624, 627 (6th Cir. 1998)). See also Michigan Dessert Corp. v. Baldwin Richardson Foods, Inc., 2007 WL 851001, at *3 (E.D. Mich. Mar. 15, 2007) Since Michigan's Long Arm statute reaches the limits of the Due Process clause, the Court only needs to perform one

analysis.

The Sixth Circuit uses a three-part test in determining whether, consistent with due process, a court may exercise limited personal jurisdiction over a defendant: 1) the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence to occur there; 2) the cause of action must arise from the defendant's activities there; and 3) the defendant's acts or the consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over him reasonable. So. Machine Co. v. Mohasco Industries, Inc., 401 F.2d 374, 381 (6th Cir. 1968). Defendants meet each of the three prongs of this test, as explained below.

First, defendants have availed themselves of the privilege of acting in the state by (1) creating the Mural at issue in Detroit and (2) attempting to block Mercedes from using the photograph it took of the Detroit landscape. Purposeful availment merely requires that Defendants "take[] actions that are intentionally directed toward Michigan." Ford Motor Co. v. Launch Tech Co. Ltd., 2018 WL 1089276, at *8 (E.D. Mich. Feb. 26, 2018); see also Bridgeport Music, Inc. v. Still N The Water Pub., 327 F.3d 472, 478 (6th Cir. 2003) (purposeful availment requires that "the defendant has engaged in 'some overt actions connecting the defendant with the forum'"). Although defendants say that having only one contact with Michigan is insufficient, courts have held that "[e]ven a single act by a defendant directed toward Michigan that gives rise to a cause of action can support a finding of minimum contacts sufficient to exercise personal jurisdiction without offending due process." Ford Motor, 2018 WL 1089276, at *5. Here, defendants both admit that they traveled to Michigan in September 2015 and spent

15

nearly a week in Detroit creating and erecting a large-scale mural onto a building in the Eastern Market District of Detroit.  In doing so, defendants transacted with a Michigan-based art publisher to create the mural as part of a Michigan-based art festival intended to attract tourism to the Detroit market as well as a Michigan-based building where the mural was erected.  Further, while present in the state, defendants also engaged in numerous sales of prints of two paintings.  See Gramajo Decl. ¶ 2; Soto Decl. ¶ 2.  Defendants therefore engaged in acts that were intentionally directed toward the state of Michigan and engaged in transactions within the state of Michigan and with people in Michigan.  Moreover, defendants' purposeful availment did not stop with creation of the mural as defendants continue to assert rights over the mural and take actions to prevent others from photographing the building in Detroit on which the mural resides.  Defendants have purposely availed themselves in Michigan.  See Duncanson v. Wine & Canvas Dev., LLC, 2015 WL 12838359, at *2, 11-12 (M.D. Fla. June 24, 2015) (Indiana-based artist created a painting in Florida which plaintiff alleged infringed her work and sued in Florida for copyright infringement.  The court found that the artist purposefully availed herself of the forum by traveling to Florida to paint the work at issue and should have "reasonably anticipate[ed] being haled into Florida Courts" concerning it.).

Second, the claims at issue arise out of defendants' contacts with Michigan.  "[T]he 'arising out of' requirement is satisfied if the cause of action was 'made possible by' or 'lies in the wake of' the defendant's contacts with the forum."  Kmart Corp. v. KeyIndus., Inc., 877 F. Supp. 1048, 1051-52 (E.D. Mich. 1994).  It was defendants' participation in a Detroit art festival and their creation of a permanent public artwork on

Detroit's cityscape which gives rise to this dispute.  There is substantial connection between defendants' creation of the mural in Detroit and their threat of litigation against Mercedes for taking an allegedly infringing picture of that mural in Detroit.  See Duncanson, 2015 WL 12838359, at *20-21 (jurisdiction reasonable where copyright infringement claims based on defendant's "purposeful trips to [the forum] and the actions that he undertook" therein contributing to creation of the painting at issue).

Finally, because Mercedes has shown that defendants have purposefully availed themselves of the privilege of acting within Michigan and the claims at issue arise out of those actions, the exercise of jurisdiction is presumed to be reasonable, and "only the unusual case will not meet" this prong.  Ford Motor, 2018 WL 1089276, at *8 (defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable" where first two prongs met).  Defendants' generalized claim of the expense of traveling to Michigan does not constitute an unusual case.  Further, while lead counsel is from California, defendants are jointly represented by Michigan attorneys, who are also representing the two other defendants.  This will make the Michigan forum an efficient place to resolve all three cases.

Finally, defendants' argument that Michigan has "no identifiable interest" in this case lacks merit.  The essence of defendants' infringement claim is that neither Mercedes, nor anyone in Detroit, can photograph a mural (or even the area around a mural if the mural is partially captured in the photograph) that exists on a publicly visible building in downtown Detroit.  Michigan has a superior interest in deciding the public's right to photograph publicly visible buildings in Detroit.  See Conceivex Inc. v. Rinovum Women's Health, Inc., 2017 WL 3484497, at *5 (E.D. Mich. Aug. 15, 2017)(where action

related to "intellectual property located in Michigan, no other place would be a more appropriate forum to afford an efficient resolution of the conflict").

In sum, the Court has personal jurisdiction over Soto and Gramajo.

## V.  Conclusion

For the reasons stated above, defendants' motions to dismiss are DENIED.  The Clerk shall schedule a status conference to chart the future course of the case.

SO ORDERED.

S/Avern Cohn  
AVERN COHN  
UNITED STATES DISTRICT JUDGE

Dated: 9/11/2019
      Detroit, Michigan