**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

MERCEDES BENZ USA LLC,
          Plaintiff and Counter-
          defendant,

     v.

JAMES LEWIS,
JEFF SOTO AND MAXX GRAMAJO,
DANIEL BOMBARDIER

          Defendants and Counter-
          Plaintiffs

2:19-CV-10948-AC-EAS
[Consolidated cases]

Honorable Avern Cohn
District Court Judge

Honorable Elizabeth A. Stafford
Magistrate Judge

| DEFENDANTS' MOTION FOR RECONSIDERATION |
| --- |

**DEFENDANTS'
MOTION FOR RECONSIDERATION OF MEMORANDUM
AND ORDER DENYING MOTION TO DISMISS**

Defendants move this Honorable Court pursuant to Local Rule 7.1(h)(3) for

reconsideration of this Court's Memorandum and Order Denying Defendants'

Motions to Dismiss [Dkt. No. 8], stating as follows:

1.  In accordance with Local Rule 7.1(a), Defendants' undersigned counsel

conferred with opposing counsel and requested concurrence in the relief requested

herein. Opposing counsel did not concur in the relief requested thereby

necessitating the filing of this motion.

2.  The reasons and support for Defendants' requested relief are set forth in

the following Brief in Support.

WHEREFORE, Defendants' respectfully request that this Court grant its

Motion and enter an Order dismissing Plaintiff's Third Claim for Declaratory

Judgment of Exemption Under the AWCPA Under 28 U.S.C. § 2201, et seq.

(Declaratory Judgment Act) and 17 U.S.C. § 101, et seq. (Copyright Act).

Respectfully Submitted,

DATED: October 9, 2019

By:        /s/ David Alden Erikson
ERIKSON LAW GROUP
David Alden Erikson
200 North Larchmont Boulevard
Los Angeles, California 90004
Telephone: 323.465.3100
david@daviderikson.com

GLUCK LAW FIRM P.C.                LIPPITT, O'KEEFE, GORNBEIN, PLLC
Jeffrey S. Gluck                   Norman L. Lippitt (P16716)
602 N. Sweetzer Avenue             370 E. Maple Road, Third Floor
Los Angeles, California 90048      Birmingham, MI 48009
Telephone: 310.776.7413            248-646-8292
jeff@gluckip.com                   nlippitt@lippittokeefe.com

*Counsel for Defendants and Counter-Plaintiffs James Lewis, Jeff Soto, Maxx
Gramajo Daniel Bombardier*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

MERCEDES BENZ USA LLC,
        Plaintiff and Counter-
        defendant,

    v.

JAMES LEWIS,
JEFF SOTO AND MAXX GRAMAJO,
DANIEL BOMBARDIER

        Defendants and Counter-
        Plaintiffs

2:19-CV-10948-AC-EAS
[Consolidated cases]

Honorable Avern Cohn
District Court Judge

Honorable Elizabeth A. Stafford
Magistrate Judge

---

**DEFENDANTS' BRIEF IN SUPPORT OF MOTION FOR RECONSIDERATION**

---

## DEFENDANTS' BRIEF IN SUPPORT OF MOTION FOR RECONSIDERATION

# TABLE OF CONTENTS

TABLE OF AUTHORITIES..................................................................vi

CONCISE STATEMENT OF THE ISSUE PRESENTED...................................vii

CONTROLLING OR MOST APPROPRIATE AUTHORITY FOR THE

RELIEF SOUGHT .........................................................................viii

I.      INTRODUCTION.......................................................................... 1

II.     BACKGROUND.............................................................................. 4

        A. MBZ's brings five declaratory relief claims, in three now-consolidated

            actions. ................................................................................ 4

        B. The Artists' motion to dismiss, and MBZ's response.............................. 5

        C. The Court's ruling tracked MBZ's opposition language quoted above,

            virtually verbatim. .................................................................... 7

III.    THE COURT SHOULD RECONSIDER ITS RULING ............................... 7

        A. The standard on a motion for reconsideration........................................ 8

        B. Copyright protection for buildings constructed prior to 1990. ................. 9

        C. The AWCPA protected architecture for the first time, by adding

            "architectural works" as a new species of copyrightable work................ 9

        D. The Court wrongly conceived of Section 120(a) as generally permitting

            photography of visible buildings............................................. 11

iv

1.  The plain words of the Section 120 show that it qualifies only the new "copyright in an architectural work." ........................................ 12

2.  The other parts of Section 120 show that the statute concerns limiting only architectural copyrights. ........................................................ 14

3.  That Section 120(a) is part of the AWCPA shows that it limits only the new copyrights created thereunder. ........................................... 15

4.  Case law support the Artists' conception. ........................................ 15

5.  The legislative history of the AWCPA shows that it limits only the new copyrights created thereunder. .................................................. 17

E.  The Court should reconsider its ruling because under the Artists' proper conception of Section 120(a), MBZ's AWCPA claims should have been dismissed for failure to plead that the building was protectable. ............ 18

# TABLE OF AUTHORITIES

## Cases

*DiPonio Const. Co. Inc. v. International Union of Bricklayers and Allied Craftworkers, Local 9,* 739 F. Supp. 2d 986 (E.D. Mich. 2010) .......................... 8

*Falkner v. GM, LLC*  2018 U.S.Dist.LEXIS 225991 (C.D.Cal. Sep. 17, 2018, No. 2:18-cv-00549-SVW-JPR) .................................................................... 16

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991)........................... 11

*Leicester v. Warner Bros.*, 232 F.3d 1212 (9th Cir., 2000) ..................................... 9

*United States v. Lockette*, 328 F.Supp.2d 682 (E.D.Mich. 2004)........................... 8

## Statutes

17 U.S.C. § 101 ......................................................................................... 5

17 U.S.C. § 102(a) .................................................................................... 6

28 U.S.C. § 1292(b)................................................................................... ii

37 CFR § 202.1......................................................................................... 6

C.F.R. 37 § 202.11.................................................................................... 1

## <u>CONCISE STATEMENT OF ISSUES PRESENTED</u>

Did the Court make a palpable error of law, in finding that 17 U.S.C. 120(a)— which provides that "the copyright in an architectural work" does not include the right to prevent photography of the work—applies where there is no copyright in an architectural work?

## CONTROLLING OR MOST APPROPRIATE AUTHORITY
## FOR THE RELIEF SOUGHT

- 17 U.S.C. §120
- Hearing on Architectural Design Protection Before the Subcomm. on Courts, Intellctll Property, and the Administration of Justice of the House Comm. on the Judiciary, 101st Cong. 2d Sess. (1990)
- *Leicester v. Warner Brothers,* 232 F.3d 1212 (9th Cir. 2000)

## I.    INTRODUCTION

The court made a palpable mistake of law when it found that Section 120(a)[1]— which provides that "the copyright in an architectural work" does not include the right to prevent photography of the work—can apply even in the absence of a copyright in an architectural work. This abstract proposition of law is incorrect. By its terms, Section 120(a) applies only to "the copyright in an architectural work"—something carefully defined by Congress as protecting only "original" buildings constructed after 1990. [See C.F.R. 37 § 202.11.] If there is no "copyright in an architectural work," then Section 120(a) doesn't apply. As a result of its mistake, the Court did not recognize originality and post-1990 construction as pleading requirements of MBZ's claim for non-infringement under Section 120(a), and therefore wrongly denied Defendants' motions to dismiss based on a failure to so plead.[2]

The mistake was caused by an uncritical adoption of MBZ's interpretation of Section 120(a), which reflects a fundamental misunderstanding of the statute. The Court found, echoing MBZ's brief verbatim, that Section 120(a) "establishes an

---

[1] All statutory references are to Title 17 of the United States Code.

[2] As explained below, there is another reason why it is undeniable that Section 120(a) has no application in the absence of a post-1990 architectural work: because the AWCPA says so explicitly. More specifically, the legislation provides that all of its component amendments apply only to buildings which post-date its enactment. This provision alone renders MBZ's interpretation obviously incorrect. See Section 206 of the AWCPA (attached as Exhibit A for convenience.)

important right of the public to take pictures of buildings that are publicly visible."
[Memorandum and Order Denying Defendants' Motions to Dismiss (Docket No.
23, "Order"), p. 10.[3]] It does not. Rather, Section 120(a) represents a simple
qualification or limitation on the new species of copyright Congress created as part
of the same legislation. While copyrights generally allow the holder to prevent
distribution of copies of their work (through photographs, for example), that is not
so with the new construct of a "copyright in an architectural work."

That this is the proper interpretation of Section 120(a) is reflected not only
by plain language of the statute, which makes clear that its limits apply only to
copyrights in architectural works—but also by the fact that it is contained in the
Architectural Works Protection Act of 1990 ("AWCPA"). As explained in the
legislative history, the sole purpose of the AWCPA was to extend copyright
protection to architecture for the first time. This is accomplished in a few lines of
the legislation (a copy of which is attached for convenience as Exhibit A).
Immediately after creating this new species of copyright, the AWCPA enacted
Section 120, which imposes several important policy-based limitations not on

---

[3] The documents relevant to the instant Motion (including the Court's Memoranda and Orders)
were filed prior to the Court's consolidation of the three cases. For the sake of clarity, and
because each Defendant made identical arguments with regard to 17 U.S.C. § 120 in their
Motions to Dismiss, all references to the filings are to those in Defendant James Lewis's case.

copyrights generally, but rather only on the new species of copyright just created (i.e. "the copyright in an architectural work").

In this brief, the Artists will show that their conception of Section 120(a) is the correct one. They will do so by pointing to the 44 words of the statute, the fact that the statute is a part of the AWCPA, the legislative history, and case law. While no case has ever squarely addressed this issue (because no one has ever advanced a view like MBZ's and this Court's), *every case* that treats Section 120(a) simply assumes its invocation requires an underlying "copyright in an architectural work." As explained below, even the most muscular interpretation of Section 120(a)— Justice Tashima's concurrence in the *Leicester* case—conceived of it not as establishing a new right, but merely as limiting the AWCPA's new species of copyright.

Correcting the mistake will affect the disposition of this case because MBZ's third claims for declaratory relief under the AWCPA would be immediately dismissed. If the mistake is not corrected, MBZ could achieve a declaration of non-infringement under the AWCPA for a photograph of a pre-1990 building (assuming it can show that the Artists' murals were part of the architecture)—even though Congress clearly intended the legislation to apply only to post-1990 buildings.

3

It's worth noting that quite a lot is at stake for other artists as well, and those who appreciate art—especially with respect to cases like this one where a pictorial, graphic or sculptural ("PGS") work exists on or in a building.[4] If the Court is correct that Sections 120(a) established an important new general right to photograph buildings, then street artists would face a radical new limit on their copyright protections. If the Court is wrong, and future courts follow its reasoning, then street artists' rights would be significantly impacted in a way Congress did not intend. Indeed, in the hearings and legislative history relating to the AWCPA, the interests of architects, the public, and photographers were carefully analyzed and balanced. That there is no consideration, or even mention, of the interests of visual artists shows that Congress did not intend to impact them.

## II.     BACKGROUND

### A.     MBZ brings five declaratory relief claims, in three now-consolidated actions.

In each of the three consolidated actions, MBZ brings five claims for a judicial declaration that a particular use of certain photographs does not infringe

---

[4] The vast majority of "street art" appears on buildings. Street art is no longer a small or alternative segment of the art world. It is legitimate art, certainly deserving of the customary copyright protection afforded to the visual arts. Indeed, it is fair to say that more people are enthusiasts of street art today than of French Impressionism. This is not to say that street art is only for the masses. Many museum shows have been devoted to the subject, including the Los Angeles Museum of Contemporary Art's groundbreaking *Art in the Streets* exhibition in 2011, which has been estimated to be the best attended exhibit in the museum's history. , *Art in the Streets*, *available at* https://en.wikipedia.org/wiki/Art_in_the_Streets (last accessed October 9, 2019).

Defendants' (hereafter referred to as the "Artists") copyrights. This motion concerns MBZ's third declaratory relief causes of action (in each case), which seek a judicial declaration "that the mural is part of an architectural work, within the meaning of § 120(a), and is therefore exempt from protection under the AWCPA. [Complaint (Dkt. No. 1), ¶ 64.]

Ironically, MBZ did not assert in its Complaints that Section 120(a) generally exempts photographs of publicly visible buildings from copyright protection. Rather, MBZ followed the contours of the statute and case law, and claimed only that they were privileged to photograph the murals because they were "part of" the architectural work they were painted on. [Id., ¶ 61 (alleging "Defendant's mural was integrated into the façade of a building…."].]

**B.    The Artists' motions to dismiss, and MBZ's response.**

The Artists moved to dismiss, on the ground that MBZ failed to properly allege that the buildings in question were "architectural works," other than to simply assert as much as a naked conclusion. [Motion to Dismiss (Dkt. No. 8, "MTD"), p. 3.] The Artists specifically cited MBZ's failure to allege that the buildings in question were erected prior to 1990 and were "original"—which are uncontroversially elements of a copyrighted architectural work.[5] Again, MBZ

---

[5] The Artists moved to dismiss on a number of other grounds as well, which are not the subject of this motion. Plaintiff does not seek reconsideration of the Court's refusal to dismiss MBZ's (footnote continues)

considered it necessary to affirmatively allege the existence of an architectural

work in order for Section 120(a) to apply. [Complaint, ¶ 64.] The Artists' motion

was simply a challenge to allege facts supporting the existence of an architectural

work.

In response to the Artists' contention that "originality" of the building in

question is a prerequisite to application of Section 120(a), MBZ for the first time

argued that there need not be any "copyright in an architectural work" for Section

120(a) to apply. Specifically, MBZ argued:

> Defendants incorrectly argue that MBUSA must allege the Building is
> "original" and "protected by copyright." Br. at 17. This makes no
> sense. Section 120(a) allows photography of architectural works
> regardless of whether they are protected by copyright and does not
> contain any requirement of protectability. "Originality" is not included
> within the definition of "architectural work" as used in Section 120(a)
> *See* 17 U.S.C. § 101. The only requirement of originality is found
> within Section 102(a), which defines the scope of copyrightable
> matter as "original works of authorship;" but this section does not
> limit Section 120(a)'s right to photograph publicly visible buildings.
> *See* 17 U.S.C. § 102(a). [Plaintiff's Opposition to Motion to Dismiss
> (Dkt. No. 13, "Opp."), p. 16.]

---

complaints for lack of personal jurisdiction and ripeness. The Artists also does not seek
reconsideration of most of the Court's order relating to the AWCPA, including that the Artists'
argument that the murals were protectable as PGS works was not "not appropriate on a motion to
dismiss." [Memorandum and Order Denying Defendants' Motions to Dismiss (Docket No. 24)
("Order"), p. 11, fn 2].

MBZ offered a similar response to the Artists' contention that post-1990 construction of the photographed building is a prerequisite to application of Section 120(a):

> Defendants obliquely suggest that Section 120(a) is inapplicable to buildings constructed before December 1, 1990. *See* Br. at 20. Defendants argue that "the AWCPA *does not protect* architectural works published prior to ... December 1, 1990." Br. at 20 (emphasis added) (citing 37 CFR § 202.1 l(d)(3)(i)). But the regulation that Defendants rely on provides only that buildings constructed before December 1, 1990 "cannot be registered" for copyright protection. 37 CFR § 202.1 l(d)(3)(i). That is not an issue in this case. The relevant statute here, Section 120(a), is not about the *protection* of architectural works; it concerns the right to photograph publicly visible buildings, a right Defendants cite absolutely no authority to undermine. [Id., pp. 17, 18 (emphasis in original).]

## C.  The Court's ruling tracked MBZ's opposition language quoted above, virtually verbatim.

The Court's ruling simply repeats MBZ's language quoted just above, virtually verbatim. [Id.; cf. Order, § IV(C), pp. 11-13.] Beyond shortening the passages where it could, and toning down what might be described as MBZ's less-than-judicial tone, the Court simply accepted as true the precise analysis that MBZ offered. As a result, the Court declined to dismiss Plaintiff's third declaratory relief claim, for a declaration of non-infringement pursuant to the AWCPA.

## III.   THE COURT SHOULD RECONSIDER ITS RULING

There are stunning mistakes of law in MBZ's language, which found their way into the Court's order. For example, and for reasons explained below, the

Court's statement, supplied by MBZ, that "Section 120(a) does not contain any requirement of protectability," borrowed from MBZ, could not be more wrong. Again, if there is no "copyright in an architectural work," which are the first words in, and the title of Section 120(a), then the statute is simply not invoked. The Court, following MBZ, states that "'Originality' is not included within the definition of 'architectural work' as used in Section 120(a). [Order, p. 12.] That's technically true. But Section 120(a) applies to "the copyright in an architectural work," which unquestionably requires originality (as all copyrights do). *See*, *e.g.*, *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991) ("To qualify for copyright protection, a work must be original to the author."); 17 USC § 102.

## A.     The standard on a motion for reconsideration.

Local Rule 7.1(h)(3) allows a party to move for reconsideration by showing a "palpable defect" by which the court and the parties have been misled, and that correcting the defect will result in a different disposition of the case. L.R. 7.1(h)(3). A "palpable defect" is "a defect that is obvious, clear, unmistakable, manifest or plain." *United States v. Lockette*, 328 F.Supp.2d 682, 684 (E.D.Mich. 2004). The decision to grant reconsideration lies largely within the discretion of the court. *DiPonio Const. Co. Inc. v. International Union of Bricklayers and Allied Craftworkers, Local 9*, 739 F. Supp. 2d 986, 1004 (E.D. Mich. 2010).

8

**B.      Copyright protection for buildings constructed prior to 1990.**

Buildings constructed prior to 1990 are generally not protected by copyright, because they are considered "useful articles," like apparel and furniture. See *Leicester v. Warner Bros.*, 232 F.3d 1212, 1216 (9th Cir., 2000). Prior to 1990, photography of buildings was allowed—and that law remains unchanged with regard to pre-1990 buildings. There has never been a need for legislation allowing photography of pre-1990 buildings.[6]

**C.      The AWCPA protected architecture for the first time, by adding "architectural works" as a new species of copyrightable work.**

In 1990, the United States became a member of the Berne Convention for the Protection of Literary and Artistic Works, which is described in the legislative history of the AWCPA as "the world's most important copyright treaty."[7] In order to formally accede to the treaty, the U.S. was required to change its copyright law in various ways. To comply with Berne's requirement that copyright protect

---

[6] Much has been written regarding the extent to which separable elements of PGS works embodied in a useful articles (like murals on a building, decorations on clothing, or ornament on furniture) are protected, culminating in the Supreme Court's *Star Athletica* decision in 2017. PGS works embodied in useful articles, such as murals on pre-1990 buildings, are protected by copyright as "pictorial works," as long as they are "conceptually separable" from the underlying useful article (i.e. the building). *See, e.g.*, *Star Athletica L.L.C. v. Varsity Brands, Inc.*, 137 S. Ct. 1002, 1007.

[7] *See*, Hearing on Architectural Design Protection Before the Subcomm. on Courts, Intellctll Property, and the Administration of Justice of the House Comm. on the Judiciary, 101st Cong. 2d Sess. (1990) ("Architectural Design Hearings," attached for convenience as Exhibit B), p. 9.

9

"works of architecture,"[8] Congress passed the AWCPA. [Pub. L. No. 101-650, §§ 701-706, 104 Stat. 5133 (1990).] This legislation has one simple objective: "to make only those changes in domestic U.S. law required to place the United States in compliance with our treaty obligations." Id. at 10. "The sole purpose of legislating at this time is to place the United States unequivocally in compliance with its Berne Convention obligations." Id. at 20.

The AWCPA is less than one page, and quite straightforward. Extending copyright protection to architectural works was accomplished in less than fifty words, highlighted in yellow. Specifically, the AWCPA:

- Added a definition of "architectural work" (essentially, the design of a building).17 USC 101. [H.R. Rep. 101-735, p. 3.]
- Made such "architectural works" the eighth category of works eligible for copyright protection (along with things like "literary works" and "musical works"). 17 USC 102. [Id.][9]

The next part of the AWCPA enacts Section 120, an entirely new statute.

[Id.] Section 120 imposes several limitations on the new species of copyrights, in response to worries that the customary rights of copyright ownership would go too

---

[8] The treaty states that certain literary and artistic works, including "works of architecture," must enjoy protection in participating countries. See World Intellectual Property Organization, Berne Convention for the Protection of Literary and Artistic Works, arts. 2, 4, Sept. 18, 1979, 828 U.N.T.S. 221, available at http://www.wipo.int/treaties/en/text.jsp?file_id=283698#P105_16290 [http://perma.cc/YH2E-44EL].

[9] An "architectural work" is the design of a building, whether or not protected by copyright. If the building meets certain requirements (including originality and post-1990 construction), then it is protected by a "copyright in an architectural work" _____.

far if applied to buildings. In this regard, an original version of Section 120 provided that the copyrights in architectural works could not be used to (1) enjoin construction, or order demolition, of a building, (2) interfere with a building owner's ability to alter or improve a building with obtaining the architect's approval, and (3) to prevent photography of a publicly visible building. [Architectural Design Hearings, p. 3 (text of H.R. 3990).].[10]

**D.   The Court wrongly conceived of Section 120(a) as generally permitting photography of visible buildings.**

The parties have adopted two starkly different conceptions of Section 120(a). MBZ, and the Court, believe the statute establishes a right to photograph publicly visible buildings. [See, Soto Opp. § III, p. 15; cf. Order, p. 10 (quoting same).] Under this interpretation of Section 120(a), the Court found no problem in MBZ's failure to properly allege the existence of an architectural work.

The Artists believe that Section 120(a)—like the other subsections of the statute—was included in the AWCPA only to place an important limitation on the new species of copyright Congress created therein: the "copyright in an architectural work" which requires both originality and post-1990 construction.[11]

_____

[10] In the final version of the Section 120, the first limitation was dropped but the other remain. [H.R. Rep. 101-735, p. 3.]

[11] The originality requirement applies to all copyrights, including copyrights in works of architecture. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991) ("To qualify for copyright protection, a work must be original to the author."); 17 USC § 102. The post-1990 (footnote continues)

MBZ's interpretation can make sense at first glance. Why would something need to be copyrighted, in order to be exempt from copyright? But as explained below, the exemption only applies where there is a copyright in an architectural work because the public has always been, and remains, free to photograph all other buildings, which are uncopyrightable useful objects (although still subject to copyrights in conceptually separable PGS works). Without Section 120(a), the new species of "architectural copyright" would make an infringer of anyone snapping pictures in the vicinity of a new building. As argued below, Section 120(a) merely preserves the right to photograph with respect to post-1990 buildings, despite their new copyright protection.

### 1.   The plain words of the Section 120 show that it qualifies only the new "copyright in an architectural work."

The words of Section 120(a) show that it places a limit only on the new species of copyright Congress created in the lines of legislation just above it. For one thing, the title of Section 120(a) is "Scope of exclusive rights in architectural works."[12] If Congress had intended to establish a general right to photograph

---

requirement is stated in the last sentence of the AWCPA, and contained in the Federal Register at 37 C.F.R. § 202.11(c)(1).

[12] Copyright is a bundle of six "exclusive rights" enumerated in Section 106—including for example the right to reproduce the work, the right to prepare derivative works, and the right to distribute copies. 17 U.S.C. § 106(1)-(3). These are the "exclusive rights" referenced in the title of Section 120. Section 120(a) limits these rights for architectural copyrights, in that they weaken the exclusive right to distribute copies of the work by disallowing the holder of a copyright in an architectural work to prevent photography.

buildings, the title certainly would have referred to all copyrights, such as "Scope of exclusive rights in *protected* works."

The words of the actual statute are just as clear:

> **The copyright in an architectural work** that has been constructed does not include the right to prevent the making... of photographs of the work.... (emphasis added).

It's hard to imagine language that more clearly contradicts MBZ's claim that Section 120(a) was enacted to allow photography of all buildings. The statute provides only that a "copyright in an architectural work" shall be limited, in that such a copyright cannot be used to prevent photography of the building in question. The statute says nothing about non-copyrighted buildings, or non-architectural copyrights. If Congress wished to establish an important right to photograph buildings, it would surely have provided something like "None of the exclusive rights granted by copyright shall not prevent photography of publicly visible buildings."

It's also significant that Congress provided that the entire AWCPA, ("the amendments made by this title"), which certainly includes Section 120(a), applies only to buildings which post-date the act. [AWCPA, Section 206.] That Section 120(a) is subject to this post-1990 requirement is absolutely inconsistent with the Court's finding that it establishes a general right to photograph all buildings, even those erected before 1990.

13

## 2. The other parts of Section 120 show that the statute concerns limiting only architectural copyrights.

As mentioned, Section 120 originally included three sub-sections. As explained above, the other two clearly imposed limitations only on architectural copyrights, by removing rights normally attendant to copyright (such as the right to enjoin infringement, the right to control alteration, and the right to prevent photography). Congress lumped these three provisions together, in a section titled "Scope of exclusive rights in architectural works," because they are parallel ways in which architectural copyrights involve less protection than all other species.

Section 120 is closely analogous to another instance of Congress creating a new category of copyrightable work, and then limiting such copyrights for policy reasons, through an ad hoc statute titled "Scope of….". In 1976, Congress extended copyright to "sound recordings" for the first time. But worried that such copyrights could interfere with the public's enjoyment of the performance of sound recordings, Congress enacted Section 114, which provides that the "exclusive rights of the owner of copyright in a sound recording are limited… and do not include any right of performance…." The title of Section 114 is "Scope of exclusive rights in sound recordings."

3. **That Section 120(a) is part of the AWCPA shows that it limits only the new copyrights created thereunder.**

The AWCPA is a surgical strike legislation. Its brevity is striking, and its only purpose is to provide exactly as much protection for architecture as Berne required. H.R. Rep. 101-735, at 10. That Section 120(a) is part of the AWCPA confirms that it limits only the new copyrights created thereunder. At the top of the page, Congress created architectural copyrights. Just below, it limited them in ways that are not typical for copyrights. If Congress wished to allow photography of buildings generally, it would not have done so as part of legislation creating new copyrights for post-1990 original buildings.

4. **Case law support the Artists' conception.**

No court has explicitly addressed the question of whether Section 120(a) establishes a general right to photograph buildings, or whether it merely represents a limitation on architectural copyrights. Really, the distinction only matters when the question is whether a PGS work on or in architectural work is infringed by a photograph. There have been exactly two such cases: the Ninth's circuit split decision in *Leicester*, and the district court's decision in *Falkner*, which probably represents the best explanation of *Leicester*. *Leicester v. Warner Bros.*, 232 F.3d 1212 (9th Cir. 2000)("*Leicester*"); *Falkner v. GM, LLC* (C.D.Cal. 2018) No. 2:18-cv-00549-SVW-JPR) 2018 U.S.Dist.LEXIS 225991 ("*Falkner*").

Both of these cases show that the Artists' view of Section 120(a) is the correct one, because a central question in each is whether the PGS work was "part of" the architectural work in question. *Leicester, supra*, at 1219, 1222, 1225; *Falkner, supra*, at *15. Under MBS's conception, that question would be of no consequence because the only inquiry is whether the allegedly infringing work is a photograph of a building. Under the Artists' conception, it is a key question because Section 120(a) has nothing to say about whether PGS works that are not "part of" the architecture.

The following passage from *Falkner* makes clear that both it and *Leicester* rely on the proposition that Section 120(a) limits only architectural works (including anything a part thereof).

> All three judges on the Ninth Circuit panel unambiguously agreed that, for Section 120(a) to apply to a PGS work that is not itself an architectural work, the PGS work must be "part of" an architectural work (citations omitted). In other words, in order for a PGS work to be treated as an architectural work (and thus be subject to the Section 120(a) exception that limits the protection of architectural works), the PGS work must either be an independent architectural work or be "part of" an architectural work. [*Falkner v. GM, LLC* 2018 U.S.Dist.LEXIS 225991, at *15, 16 (C.D.Cal. Sep. 17, 2018, No. 2:18-cv-00549-SVW-JPR).]

Even Justice Tashima in *Leicester*, whose concurrence is considered the strongest interpretation of Section 120(a) in that he alone believes that that statute can trump even copyrights in PGS works, believes that the statute can only apply where such PGS work is "part of" the architecture and a "joint architectural/artistic

work." *Leicester* at 1222 (Tashima concurrence) (agreeing with trial court that "[i]n these factual circumstances, where a joint architectural/artistic work functions as part of a building," Section 120(a) applies even to the PGS aspects of the work).

### 5.      The legislative history of the AWCPA shows that it limits only the new copyrights created thereunder.

The AWCPA's legislative history makes clear no legislators, experts, or other witnesses conceived of it as establishing a general right to photograph buildings—rather all participants saw the statute as way to preserve the right to photograph buildings by limiting their new copyright protection. For one thing, the legislative history states as much: that it is only "limiting the exclusive rights in architectural works." [H.R. Rep. 101-735, p. 21].

The substance of the analysis and debate confirms the Artists' interpretation. There is much analysis of whether architects' lost income on unauthorized photographs would unduly interfere with their incentive to create. [See, e.g. Architectural Design Hearings, pp. 69-71.] There is much balancing of architects and photographers' competing interests.[13] [Id.] There is, however, no analysis of the interests of visual artists, or input from visual artist groups. If the Court and MBZ are correct that Section 120(a) trumps all copyright, visual artists' copyrights

---

[13] The Subcommittee considered the testimony of a well-known American architect (Michael Graves, FAIA), the American Institute of Architects, The Frank Lloyd Wright Foundation, the American Consulting Engineers Council and the American Society of Magazine Photographers.

would be radically weakened. Congress would not blithely impose a such a significant limit on visual artists' rights without their input and analysis.

In fact, legislators were extremely interested in visual artists rights at the same time they were debating the AWCPA and its Section 120—also due to the requirement that the U.S. change its copyright law to adhere to Berne Convention minimum standards. To comply with Berne, Congress passed (also in 1990) the Visual Artists' Rights Act (known as "VARA"), which dramatically strengthened visual artists rights. The same legislator, Robert Kastemeier, introduced both bills. It is inconceivable that at the same time Congress was compelled to strengthen visual artists copyright rights, it would have simultaneously truncated those rights without analysis. Indeed, if the AWCPA limited visual artists' rights in the way that follows from the Court's interpretation, surely someone would have asked if this was even permissible under Berne's minimum standards.

**E.    The Court should reconsider its ruling because under the Artists' proper conception of Section 120(a), MBZ's AWCPA claims should have been dismissed for failure to plead that the building was protectable.**

One fundamental piece of the Artists' correct conception of Section 120(a) is that the statute has absolutely no application if there is no underlying "copyright in an architectural work." Contrary to the Court's ruling, this makes "protectability" an essential element of MBZ's Section 120(a) claim.

18

MBZ will argue that the Artists are merely trying to rehash already rejected arguments. While it is true that the Artists previously argued that protectability of the subject building is an element of the applicability of Section 120(a), and that it cited in plain language of the statute as proof, a motion for reconsideration does not require new facts or law. Reconsideration is well within the Court's discretion, especially because it was "misled" in the sense that it adopted, virtually verbatim, MBZ's faulty explication of the law.

Respectfully Submitted,

DATED: October 9, 2019

By:        /s/ David Alden Erikson

ERIKSON LAW GROUP
David Alden Erikson
200 North Larchmont Boulevard
Los Angeles, California 90004
Telephone: 323.465.3100
david@daviderikson.com

GLUCK LAW FIRM P.C.                LIPPITT, O'KEEFE, GORNBEIN, PLLC
Jeffrey S. Gluck                   Norman L. Lippitt (P16716)
602 N. Sweetzer Avenue             370 E. Maple Road, Third Floor
Los Angeles, California 90048      Birmingham, MI 48009
Telephone: 310.776.7413            248-646-8292
jeff@gluckip.com                   nlippitt@lippittokeefe.com

*Counsel for Defendants and Counter-Plaintiffs James Lewis, Jeff Soto, Maxx Gramajo Daniel Bombardier*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 9, 2019, I electronically filed the foregoing

DEFENDANTS' MOTION FOR RECONSIDERATION with the Clerk of the

Court using the ECF system, which will send notification of such filing to all

counsel of record.


By:   /s/ *David Alden Erikson*
David Alden Erikson
200 North Larchmont Boulevard
Los Angeles, California 90004
Telephone: 323.465.3100
david@daviderikson.com